JOURNAL ENTRY AND OPINION
Defendant-appellant Carmella Chappell (defendant) appeals her conviction for felonious assault after a jury trial.
Defendant, who is forty-five years old, and twenty-six-year-old Chantelle Kane (victim) are women who were drinking in the same bar after midnight. They were regulars at the bar; in fact the defendant was a part-time bartender there. Also present at the bar was Raashawn Payne (boyfriend), who is the father of the victim's two children, the younger of whom was five weeks old at the time of this incident. He is also the father of defendant's unborn grandchild. With defendant were her two daughters. The boyfriend was talking with the daughter who was pregnant by him.
The victim called the boyfriend away from the defendant's daughter and spoke with him; then the boyfriend left the bar. The defendant approached the victim, who was sitting with her girlfriend.[1] Positioning herself between the victim and her friend, defendant accused the victim of slighting her. She then went back to sit with her daughters but returned twice more to speak with the victim. The victim is a petite woman, and the defendant is much larger. All the parties had consumed a significant amount of alcohol.
The testimony conflicts concerning what happened next. All parties agree that a fight broke out between the women in which the victim was knocked unconscious and sustained a cut over her eye which required five stitches. The victim claims that defendant hit her in the head with a beer bottle. The victim's friend states that, although she did not actually see defendant strike the victim, she did out of the corner of her eye see defendant grab the beer bottle off the bar and make a swinging motion toward the victim with the bottle. The friend stated that the victim immediately collapsed bleeding from the forehead.
Defendant claims, on the other hand, that while she was talking with the victim, someone pulled her hair from behind and started the fight. Although she admits to swinging at the victim, she denies swinging or hitting her with a beer bottle. Defendant's witnesses, her two daughters, both said they were outside at the time the fight started. When they reentered the bar, the victim already was bleeding and they intervened to try to break up the fight. The victim was transported to the hospital by ambulance and made a police statement a few hours later.
Defendant was interviewed by the police six months later, at which time she gave them a statement denying the assault. Convicted by a jury, she was sentenced to two years at Marysville. She timely appealed her conviction.
Defendant states four assignments of error, which we will address out of order.
For her third assignment of error, defendant states,
 III. APPELLANT'S FELONIOUS ASSAULT CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant points out that one of the state's witnesses, the victim's friend, did not actually see the alleged assault. She also emphasizes conflicting evidence, including the fact that the friend testified that defendant was actually trying to smooth things over between herself and the victim rather than picking a fight with her, as the victim testified. Finally, defendant observes that the victim admitted to being intoxicated and not remembering the events of the evening.
The state counters that a "review of the evidence reveals nothing contradictory, unreliable, uncertain, nor [sic] incredible regarding the evidence presented." Appellee's brief at 10.
Admittedly there were inconsistencies between the testimony of the victim and that of her girlfriend, both state's witnesses. The victim claimed she was not upset by the boyfriend talking to defendant's daughter, but her friend testified to the contrary. They also disagreed on defendant's initial demeanor in approaching the victim the first two times she came over to talk. The victim claimed that defendant was belligerent from the first, but the friend stated that defendant initially was trying to smooth feelings between them.
The witnesses agreed, however, on the facts which comprise the elements of the offense. Both state that defendant picked up a beer bottle from the bar and swung it at the victim. Although the friend did not see the actual blow to the victim's head because the defendant was blocking part of her view, she saw the victim collapse immediately after defendant swung the bottle in the direction of the victim's head, and she saw the victim bleeding from the forehead. The friend's testimony, therefore, is not inconsistent with the victim's testimony as to the elements of the offense: the defendant struck the victim, and this blow caused a loss of consciousness and a cut requiring five stitches over her eye. In fact, the friend's testimony corroborates what the victim stated on the essential elements.
The strongly conflicting testimony in the case at bar came from the defendant and her boyfriend, Larry Robinson. Defendant claimed that she was attacked from behind by an unknown aggressor while the victim attacked her. Larry Robinson, defendant's boyfriend, stated that although he was outside the bar itself at the time of the incident, he could see what was happening through a window. He stated that defendant was at least four feet from the victim when someone grabbed the defendant by the hair from behind. He also claimed that the victim was not bleeding until after the defendant was outside the bar. The defendant's daughters, on the other hand, both testified that the victim was bleeding when they reentered the bar and observed the fight between the victim and their mother.
As noted in State v. Martin (1983), 20 Ohio App.3d 172, a claim of manifest weight and a claim of sufficiency of the evidence "are governed by entirely different standards." Id. at 175. Because defendant's fourth assignment of error raises the issue of sufficiency of the evidence, we address the distinction. As the Martin court stated, the test is much broader for a manifest weight argument.
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.
Id. at 175.
It is to be expected that witnesses' testimony will differ when recounting a chaotic event like a bar fight. It also is to be expected that witnesses' testimony will conflict when they have different vested interests. The role of the jury is to determine which testimony is true and which is false. Weighing the evidence and considering the credibility of the witnesses, we conclude that the jury's decision that defendant's witnesses were less credible than the state's witnesses is not a manifest miscarriage of justice. We therefore overrule the third assignment of error.
For her fourth assignment of error, defendant states,
 IV. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S CRIM.R. 29 MOTION AS THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR FELONIOUS ASSAULT.
Defendant argues that, "given the profusion of inconsistencies in the State's two main witnesses to the event, and the bias inherent in each witness' testimony, a finding that the State had presented legally sufficient evidence going to each element of the offense was unreasonable." Appellant's brief at 11.
We already have assessed the evidence under the manifest weight standard. As we stated, the sufficiency of evidence standard differs from the standard for manifest weight.
 As to the claim of insufficient evidence, the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.
Martin at 175. As noted in the discussion under assignment of error III, the inconsistencies in the state's witnesses' testimony were not material.
The elements of felonious assault are stated in R.C. 2903.11, which provides in part:
(A) No person shall knowingly:
(1) Cause serious physical harm to another * * *;
 (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
The striking of the victim with the beer bottle with her subsequent loss of consciousness and bleeding clearly satisfies the elements required. Both of the state's witnesses stated that the defendant purposefully picked up the bottle and swung it, testimony satisfying the knowingly element. No one argues that the victim was not seriously injured. The records of her emergency room treatment, moreover, which were admitted into evidence, documented her injuries. This evidence is sufficient to satisfy the serious harm element.
Defendant argues that because the friend stated she did not actually see the bottle strike the victim, her testimony is inconsistent with the victim's. First, that one witness saw more is not an inconsistency. The friend explained that only a very brief moment of the event was obscured. Moreover, the jury could properly conclude from the circumstances that defendant struck the victim. "Circumstantial evidence and direct evidence inherently possess the same probative value." Statev. Jenks (1991), 61 Ohio St.3d 259, 272. The jury could properly construe the friend's seeing the defendant swing the beer bottle toward the victim's head and immediately thereafter seeing the victim collapse bleeding from the head as circumstantial evidence that the defendant struck the victim with the beer bottle.
Because the state's evidence showed that all the elements of the crime were present, the evidence is sufficient to support a conviction, and the trial court did not err in overruling defendant's motion for a Crim.R. 29 acquittal. Accordingly, assignment of error four is overruled.
For her second assignment of error, defendant states,
 II. THE TRIAL COURT COMMITTED PLAIN ERROR IN FAILING TO INSTRUCT THE JURY THAT IT MUST UNANIMOUSLY FIND APPELLANT GUILTY OF ONE OR THE OTHER FORMS OF FELONIOUS ASSAULT.
Defendant argues that the trial court's jury instructions did not inform the jury that if it found her guilty of felonious assault, it had to find unanimously that she committed the crime either with a deadly weapon or without a deadly weapon. She claims, therefore, that part of the jury may have found her guilty of felonious assault with a deadly weapon and half found her guilty without the weapon. If that were the case, she argues, she should have been acquitted.
The state correctly counters, however, that if evidence exists to support a conviction on either charge, the appellate court cannot reverse the conviction. As noted in State v. Avery (1998), 126 Ohio App.3d 36,49, "the United States Supreme Court has also held that when a jury returns a verdict on an indictment charging several acts in the conjunctive, the verdict can stand as long as the evidence is sufficient with respect to any of the acts charged." Id., citing Turner v. UnitedStates (1970), 396 U.S. 398.
The standard of review for this issue in the case at bar is plain error, because defendant failed to object to the jury instruction at trial. State v. Hartman (2001), 93 Ohio St.3d 274, 292. A finding of plain error "`is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'"State v. Sims (1982), 3 Ohio App.3d 331, 335, quoting State v. Long
(1978), 53 Ohio St.2d 91, syllabus paragraph three.
The evidence presented at trial, however, was sufficient to support a conviction for felonious assault under either section (A)(1) or section (A)(2) of R.C. 2903.11. As noted previously, the evidence shows through hospital records that the victim suffered serious harm, as required in R.C. 2903.11(A). Additionally, the evidence presented through the state's witnesses' testimony was sufficient to support a finding that the serious harm was caused by the defendant. Thus the jury would not have been in error for finding defendant guilty under section (A)(1) of the statute, knowingly causing serious physical harm to another.
The second section of the statute on felonious assault has the following element: causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordnance. On this element, we find that the evidence is again sufficient to support a finding that defendant struck the victim with a beer bottle. Moreover, defendant does not dispute a beer bottle is a deadly weapon. Because the evidence was sufficient to support a finding of guilt under either section of R.C. 2903.11, we find no plain error in the trial court's jury instructions.
The second assignment of error is overruled. For her first assignment of error, defendant states:
 I. APPELLANT WAS DEPRIVED OF HER CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO OBJECT TO PREJUDICIAL TESTIMONY RELATING TO PRIOR CRIMINAL CONDUCT IN VIOLATION OF EVID.R. 403(A).
Defendant complains that when the detective who took the victim's statement testified, the detective stated that the victim had identified the defendant from a mug shot. Defendant claims that the mention of a mug shot was prejudicial to her because it informed the jury that she had a criminal record. Because the testimony of the state's witnesses was conflicting, defendant argues that knowledge of her criminal record could have influenced the jury to believe she was guilty without being convinced by the state's witnesses.
To show ineffective assistance of counsel, defendant must prove not only that counsel's representation fell below an accepted standard, but also that but for that representation the outcome of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136. Further, licensed counsel in Ohio is presumed to be competent. State v. Lytle
(1976), 48 Ohio St.2d 291, 397. Finally, the courts have noted that there are any number of valid trial tactics an attorney may choose to use.Bradley at 142.
As the state argued, the jury could have assumed that defendant's "mug shot" picture was taken the day of the arrest and was not necessarily reflective of a prior criminal history. It is quite possible that defendant's counsel felt that objecting to the one-time off-handed reference to a mug shot would bring undue attention to it and essentially "point it out" to the jury. His decision to not object "was certainly a legitimate strategic choice * * *." Id. at 144.
Because defendant has failed to show that counsel's failure to object to a passing reference to a mug shot of defendant was below the accepted standard of representation, this assignment of error is overruled.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J., and TERRENCE O'DONNELL, J., CONCUR.
[1] The victim's girlfriend is the boyfriend's cousin.